We'll go ahead and get started with the first case for argument, which is Leon D. Black v. Guzel, Ganieva, Wigdor, LLP, Josh Harris, Steve Rubenstein. Just one moment. All right. Mr. Kellogg, whenever you're ready. Thank you, Judge Lee, and may it please the court. The court below made two procedural errors that individually and together require reverse. First, the court abused its discretion by denying plaintiffs 12A2 motion for leave to amend based on an alleged violation of the court's deadlines and admonitions. No such deadlines or admonitions were established or given for a 12A2, 15A2 motion. In its January 7th amend or respond order and in the March 10 hearing, the court merely observed that once plaintiff filed its opposition to the motions to dismiss, plaintiff would no longer have an amendment as of right under rule 15A1. At no time did the court forbid a motion for leave to file other amendments under 15A2. I'm sorry, Counselor, though, are you conflating the ability to seek leave with it being granted? I mean, the whole point of asking for leave is that sometimes the answer will be no. So I'm not sure what the issue is here. Well, under 15A2, it says that the court shall give leave freely when justice so requires. This court's case has established that justice so requires in the absence of prejudice or bad faith, neither of which are present here, neither of which were found. But that's separate and apart, though. Like, whether or not you were denied a motion to leave is separate and apart from whether or not you dispute the grounds by which it was denied, right? Well, yes, there's no question that we were denied leave to amend under 15A2, which is what we moved under. But the only reason the court gave is that we had exhausted our right to amend under 15A1. So that is a legal mistake made by the court. Is that accurate, though, to say that that's the only reason the court gave? Didn't the court also state that for the reasons stated in the defendant's letter, that that's part of why leave to amend was being denied and wasn't part of what was in that letter of futility? Yes, futility was, and I'd like to get to that in the context of the dismissal of prejudice. But as to the denial of this motion, the only two bases recognized by this court are either prejudice or bad faith. There was no prejudice in this case because it's well established under this court's precedent of Monahan that merely having to refile a motion to dismiss does not constitute prejudice. I think there were arguments made that there actually potentially was prejudice. But aside from that, if you could actually turn to the futility question, because it appears that aside from any, if there were potentially error with regard to the denial of the leave to amend, it appears that that would be harmless if, in fact, there's a futility question. I agree with that, Your Honor. I mean, it was a separate error if you did deny the motion. But the key issue really is the dismissal of the First Amendment complaint with prejudice without any attempt to grapple with the allegations in the second amended complaint. And this court has repeatedly- Are you appealing the dismissal of the First Amendment complaint? We are not. Now. We are not appealing the dismissal of the First Amendment complaint. We are dismissing- I understood you a moment ago to say that that was an error. And there are a lot of errors out there in the world, but the question is, is it before us? No, we are not. We are not claiming that the court erred in dismissing the First Amendment complaint. We are merely claiming he erred in dismissing it with prejudice without looking at the second amended complaint to see whether the new allegations and the new legal constitute- Well, if you object to the dismissal with prejudice, I don't see how you can concede, as I think you have to, that you're not appealing the dismissal of the First Amendment complaint. We are appealing the dismissal with prejudice. We are not arguing that his 62 pages of reasoning about why he was dismissing it. We're not challenging that. What we are challenging is this court has repeatedly held that you cannot dismiss with prejudice without considering the allegations in a further amended complaint. The court held that in the bench case, which is on all fours. I'm sorry, if I could just jump in. So you're essentially only making a procedural argument that the denial of the dismissal of the First Amendment complaint on the merits is fine, but it's an error because, in your view, the second amended complaint was not considered? And one- Correct. That's part of- But then the second part of my question would be, given that the court had already denied the second amended complaint, I don't know that I think it's accurate to say that it wasn't considered. It considered the proposal for the second amended complaint, denied that, and then dismissed the first amended complaint, having already ruled on the second amended complaint. That is why we are challenging the denial of leave to amend the second amended complaint. We think that was error by the court, but it was an error that was compounded at the end. As your Honor noted, that would have been resolved if the court had allowed further amendment and had not dismissed the prejudice. But did he implicitly allow it by saying that he was going to decide on whether or not it was prejudice at a later point in time? I mean, I think what, to Judge Jacobs' point, I think what you're actually doing is questioning what the judge did as opposed to the procedure. That is where the crux of your argument is. The crux of our argument is this court's cases make it absolutely clear you cannot dismiss a complaint with prejudice without considering amendments offered by the plan. Well, why couldn't we say or construe it as he considered it and rejected it? Because he made it clear that he did not consider it, and he did not even read the second amended complaint. When you look at the footnote in his opinion in which he dismisses with prejudice, he says the court has found that the first amendment complaints were glaringly deficient in fundamental respects. And thus, thus funds would be futile to allow repleting. So he based that solely on his perception of the errors of the first amendment complaint. He did not consider the allegations in the second amendment complaint, which were substantially changed. But why is it not the case, I mean, you're saying he didn't consider the allegations in the second amendment complaint, but didn't he when he ruled on the second amendment complaint, when he denied leave to submit the second amendment complaint? He did not ever consider the substance of those allegations and whether they stated a claim. And this court has repeatedly said in the Bench case, for example, where a second amendment complaint was offered, that the court erred in dismissing with prejudice without, as it said, analyzing the changes in the proposed amendment complaint. The court held the same thing in the Brooke case, even where statements were made at oral argument, offering new facts and new theories, that it was the error not to consider those before dismissing with prejudice. And in the Williams case, the court said even post-judgment, even in a post-judgment motion raising new factual allegations, it's an error for the court not to consider and not to analyze whether they changed the result. And our position is that our second amendment complaint, regardless of the first amendment complaint, our second amendment complaint states a claim under RICO, and the court should have grappled with that and dealt with that. What about the conference in which the judge said, well, if you're going to respond to this motion, you are presumably foregoing, then, the decision to seek electively the right to amend. The court said that in the initial hearing where we told him we were contemplating an amended complaint. Contemplating, he said, if you are going to respond, you are presumably foregoing, and when a district judge says you are presumably foregoing, that's not a suggestion, that's not a polite idea. That is a warning. If you look at the context of that colloquy, it was about amendment as of right under 15A1. It was not about motion for leave to amend under 15A2. You are foregoing the right to seek electively to amend. You said, your view is the judge was not foregoing your right to amend by some other procedural device. Nor could he, because 15A2 makes clear that at any time a party may move for leave to amend. What that colloquy was about was whether we still had an amendment as of right as to two of the defendants, because they were not named in the initial complaint, but only in the first amendment complaint. I don't see counsel's response to that making plain that that option is being contemplated and reserved. I think it's fair for the judge to assume that this is it. We've heard your arguments. I'm going to rule on them and do an opinion, and that that will be the end of the case, one way or the other. Even if you say that the court acknowledged in that colloquy that it would decide, after ruling on the first amendment complaint, whether that was to be with prejudice or not. So that decision was reserved and not foreclosed. And our argument is that under this court's cases, he cannot dismiss with prejudice without actually grappling with the significant changes made in the second amended complaints. So you want us to send it back so that the judge can consider your complaint that this fact situation lends itself to analysis as recall? Yes, we do. It was a substantially changed complaint. We believe it states a claim under RICO. And this court's strong preference is to resolve cases on the merits, not on procedural issues, which is why the court must grapple with the amended complaint. All we ask is for a remand for him to apply the analysis to the second amended complaint, whether it states a claim under RICO. And I think that's our basic right under the Federal Rules of Civil Procedure, particularly as interpreted by this court. All right, thank you, Mr. Kellogg. You've got some rebuttal. Yes, whenever you're ready. May it please the court. Kevin Minzer for Defendant Giselle Ganeva. In my two minutes, I have two points. First, the district court did not abuse its discretion in denying plaintiff's motion to amend. The request to amend came after defendants had twice moved to dismiss and plaintiff had filed a 63 page opposition to the second motion. And yet, in seeking leave to amend, effectively asking the district court to restart the process for the third time, which was clearly prejudicial to defendants, plaintiff offered no explanation at all as to how the second amended complaint would remedy the defects in his RICO claims that defendants had twice pointed out in successive motions. Mr. Minzer, is it your view, well, what is your view with regard to whether or not the district court grappled with the merits of the second amended complaint? The district court did review the second amended complaint. And as the court noted in the questions to counsel, had determined that for the reasons stated by defendants, the amendment was not appropriate. And one of the reasons stated by counsel was that the amendment was futile. And another was that it made no effort, the plaintiff had made no effort to describe exactly how the proposed amendment would address the defects in his complaint that had been twice briefed. Did you argue that the RICO pleadings were futile? They were absolutely futile, your honor. And that goes to the second point, which was that the district court was correct in dismissing those claims with prejudice. By not challenging on this appeal, as your honor pointed out, that any aspect of the district court's meticulous decision to dismiss the first amended complaints and the RICO claims in those complaints, plaintiff has left himself no path to possibly prevail in this case. The proposed second amended complaint, contrary to what counsel has argued, adds no facts that could cause Judge Engelmeyer to reconsider his decision that the RICO claims are glaringly deficient in fundamental respect. So can I just clarify, it is not your position that he didn't have to review it. It is your position that he did and determined that it was futile. Well, he did review it. It was presented to him. He accepted defendant's argument in a letter, among other things, that it didn't address the defects in the claims, and that it was futile, and it was prejudicial, and it was untimely. And it was contrary to the court's previous instructions. That is the substance of the first order that they are appealing. That was clearly not an abuse of discretion. All right, thank you. If you can wrap up. Just briefly, your honor, on the question of futility. There is nothing in the second amended complaint that would add any new facts that would cause the court to reconsider the fundamental question of whether there's a RICO enterprise in fact, association in fact. There's nothing that in the second amended complaint that suggests that Ms. Ganeva had any personal relationship with either Mr. Harris or Mr. Rubenstein as is required, or that the three of them. In person or in writing? Any relationship, any connections. There is nothing in either the first amended complaint or the second one, your honor, that would suggest they ever communicated in their lives. And that there is nothing that would suggest in that second amended complaint, which they want a remand for, that would suggest that they had any unlawful common goal. Mr. Kellogg's request for a remand would simply delay the inevitable end of what is ultimately a baseless and retaliatory case. Unless the court has further questions, I'll yield to my colleagues. Thank you. Mr. Gershinoff? Yes. Good morning. May it please the court. My name is Max Gershinoff. I'm here for defendant Wigdor, LLP. Just to begin, whatever else can be said about Judge Engelmeyer's well-reasoned, analytic decision in this case, it wasn't an abuse of discretion. To the contrary, the judge's admonitions and warnings regarding the amendments to the complaint were set out beginning in his individual rules, where he has an amend or oppose order. Then in January of last year, when the plaintiff first sought to amend his complaint in the face of Wigdor's motion to dismiss and for Rule 11 sanctions, he warned that typically there will be no further leave to amend after this amendment. The plaintiff took advantage of that. He amended his complaint to add in some new defendants. The complaint remained defective for multiple independent reasons. And then again, when the defendants moved to dismiss the first amended complaint, Judge Engelmeyer once again made clear at the March conference, unambiguously, that if the plaintiff tried to amend his complaint, if the plaintiff rather responded to the motions to dismiss and oppose them, he would presumably be foregoing any further leave to amend. So Judge Engelmeyer actually gave the plaintiff more chances to amend than he would ordinarily give in this case, but rather than avail himself of the opportunity to amend the complaint a second time without opposing the motions to dismiss the first amended complaint, the plaintiff tried to have it both ways. He wanted Judge Engelmeyer to do two things at once, to adjudicate the second amended complaint and also to adjudicate the defendant's motions to dismiss the first amended complaint. And that's why Judge Engelmeyer gave them that binary choice. You can either oppose these motions to dismiss or you can try to amend the complaint another time, but you can't do both. But the plaintiff, in frankly what seems to amount to bad faith, forced all of the defendants to brief a motion to dismiss. And then he opposed it. The plaintiff opposed the motions to dismiss. And just four days before the replies were due, then he belatedly announces his intention to amend again. There were multiple reasons why Judge Engelmeyer properly denied them, denied the plaintiff leave to amend yet another time. Contrary to what the plaintiff argued, prejudice or bad faith are not the only grounds for denial of leave to amend. Undue delay is another ground for denial of leave to amend that's been recognized by this court. And here you have really the trifecta. The defendants would have been prejudiced by having to respond and brief a motion to dismiss yet another defective racketeering complaint. The bad faith that sort of suffuses this case from the start, I think was apparent to Judge Engelmeyer. It's certainly apparent to us. This was a retaliatory case that was filed against opposing counsel in a first filed action against the plaintiff, my client, Wigdor LLP. All it did was represent its client in a sexual assault lawsuit against the plaintiff, and it found itself a defendant on these specious RICO and defamation claims. And it looks nakedly retaliatory, and so it was properly rejected. And I think that the bad faith is manifest. Thank you. Good morning. Good morning. May it please the court. Paul Stagnoletti from Davis Polk and Wardwell on behalf of Mr. Harris. I'll try to be brief, and I'll try not to repeat some of the points that my colleagues have made. But I do think it's worth focusing a moment on something that was brought up earlier, which is that it wasn't merely Judge Engelmeyer issuing a warning to the plaintiff during the March conference about amend or oppose. It was actually plaintiff's counsel themselves making representations to the court about what it would and wouldn't do. And if I may, let me just read a couple sentences that plaintiff's counsel said to the court during that conference. What page are you on? This is from page 802 of the joint appendix. And this is Ms. Estridge, and she says, in response to the warning that the court referenced earlier, quote, we would like to use that time period in part to decide whether our appropriate response is to oppose the motions to dismiss or whether, in light of the new evidence we have received, which does change certain critical facts, we should seek the court's permission to amend, even if we don't have amendment as of right. And we would do that within that time period. That was the representation that plaintiff's counsel made to the court. And what they ended up doing was breaking that commitment to the court. Rather than doing what they said, they opposed the pending motions to dismiss, the amended complaint, and then two weeks later and four days before the reply briefs were due, they then sought leave to amend the complaint again. In these circumstances and on this record, the district court was well within its discretion to deny leave. I would also say that's especially true, as counsel noted, given the scandalous and stigmatizing legal claims that we had here, which were especially prejudiced to defendants the longer they remained out there. It's also critically important that that was not the end of the story for the plaintiff. As the court noted earlier, Judge Engelmeyer, in his April 25th order, did not categorically foreclose the possibility of further amendment. That didn't happen until his June 30th opinion dismissing the amended complaint, when he made extensive findings about why the amended complaint, as pleaded, was woefully deficient and could not be cured through further amendment, which is why he dismissed it with prejudice. He found that there was no relationship among the defendants. There was no common purpose, no predicate acts, no pattern of racketeering, and no injury. What he did was even better than analyzing the proposed second amended complaint. He considered the possibility of any types of amendments, and he found that this was just simply not a RICO case. It could not be cured by creative adjustments to particular allegations. It could not be cured at all because this was simply not a RICO case. But you seem to differ from your colleagues in that you think that he might not have reviewed the second amended complaint. I read the order and feel like it can go either way. I believe it can go either way, Your Honor, quite frankly. There's nothing expressed in the order that says that he reviewed the second amended complaint. There's nothing that says that he did not. The defendants made futility arguments in the letter to the judge with respect to the proposed second amended complaint. The judge granted our motion or I'm sorry, the judge denied the motion to amend the complaint for the reasons set forth in our letter. It's possible he did. It's possible he didn't. What we do know is that he had the second amended complaint when he decided to dismiss the first amended complaint with prejudice, and he considered all possible amendments. So your position is there doesn't need to be magic words that said I did X, Y, and Z. We can assume yes or no, but that in any event, he did something better by hypothesizing something that could be out there. Exactly, Your Honor. Thank you. Thank you. Good morning. May it please the court. My name is Jacob Buchdahl of Sussman Gottfried. We represent Stephen Rubenstein. He's the most implausible member of this so-called enterprise, which is why plaintiff's attempt to plead his membership and participation in predicate acts was the weakest part of the amended complaint. John Jagelmeyer recognized this weakness repeatedly in his opinion, and Mr. Black doesn't even try to refute this. Astonishingly, the best he can do on appeal is try to assure this court that if permitted, he will allege that upon reflection, Mr. Rubenstein was actually part of a completely different enterprise than engaged in completely different predicate acts that are not described in the first amended complaint. The irony of this case is that Leon Black, who claims that he has been the victim of false allegations, would respond by making his own false allegations against our client. And after two failed attempts by Mr. Black to weaponize the RICO statute by spouting utter falsehoods about our client and others, he's here pleading for the chance to do it all over again. Judge Engelmeyer wisely denied him that opportunity, and we respectfully submit that this court should affirm the district court's judgment. And if the court has no questions for me, I'll rely on our papers. Thank you. So I think it's clear that the central issue on this appeal is going to be whether a district court can dismiss a case with prejudice without any analysis of the proposed amendments. And we suggest that the answer to that is clearly no. The court has said so repeatedly. I'm sorry, I at least had a few of your colleagues that think that it is ambiguous as to whether or not he reviewed it or not. What are the best words you have for both? Two questions. One is, where is it that he needs to have magic words here that said that I expressly reviewed it? And two, what is the best thing in the order we have before us that suggests that he didn't? First of all, I'm not suggesting there have to be magic words. But this court's cases, Bench, Williams, and Brooke all say the court has to grapple with and analyze the new proposals. And you can't do that silently. That has to be done in a way that this court can review. Can you do that without making a futility finding, though? I mean, I think that's the challenge, right? If he decided that it was futile, there was something that he was looking at. And why are we supposed to infer? So if you look at the words of the footnote in which he dismissed, he says, quote, the court has found that the facts claims were glaringly deficient in fundamental respects, and thus finds it would be futile. Right, but didn't he also go through its order about which ones he thought could be perhaps corrected and then which ones he couldn't? So doesn't that imply? He did mention one that he thought could be corrected. But as counsel noted, the Second Amendment complaint is substantially different. It pleads a different enterprise, a different time frame, different members, different predicate acts, et cetera. We cured the deficiencies that the court noted in analyzing the First Amendment complaint. But doesn't going through some of them and not making the same finding for all of them suggest that he reviewed the Second Amendment complaint? I mean, I think, are we just having a debate over how to read this order? And I'm still lost at where it matters. So there was absolutely no indication in his opinion dismissing the First Amendment complaint that he grappled with any of the allegations in the Second Amendment complaint. There's nothing in there about the different predicate acts, the different enterprise, the different membership of that enterprise. But why can't we assume that if a judge rules as to the adequacy of pleading or the adequacy of an argument that the judge has encountered it, has grappled with it, and has read it? Well, it's a little bit like President Trump saying I fought the... Otherwise, you have a little check mark. I read this, I read that. Oh, I didn't read that. I read this and so on. I mean, if the court rules on it, why can't we assume the court has read it? Because there's absolutely no indication in the record that the court did analyze. And what this court has said is you have to analyze the new amendments. If the court decides a thing, isn't there a presumption that the court read the papers? Why does the court have to say, you know, I woke up this morning and I did my job? If the court had said I've reviewed the Second Amendment complaint and I believe it's futile, that would be one thing. And that's, of course, a question of law. It's a strict question of law reviewable to no vote by this court. Would that be grappling? Would that be... Would that be grappling? No, I don't think so. Because it would give the court no basis, really, to understand. You just said it would be enough, but actually your position is it wouldn't be enough because it wouldn't be grappling. That he has to analyze, as this court said. And again, we're claiming that the Second Amendment complaint is sufficient to state a claim. That's an issue reviewable to no vote by this court. It's a question of law. So either this court is going to have to wade through the Second Amendment complaint and decide what is and isn't and whether it states a claim or not. Or it's going to have to remand for the district court to do what it was supposed to do in the first place, which is conduct that analysis. Can I just ask you, if, let's say, hypothetically, let's say we agreed and said, you know what? We don't think the district court did consider the Second Amendment complaint, but we think that the ruling on dismissing the First Amendment complaint, which did include a finding of futility, means that any error in ruling on the Second Amendment complaint is harmless. What's your view on that? Well, no, it can't possibly be harmless because if it's not futile, then the Second Amendment complaint takes the place of the First Amendment complaint. Well, no, no. If in ruling on the First Amendment amended complaint, the judge is saying I'm dismissing this and it's futile. And that means that I've considered the world in which these claims could go forward and I have already decided that it's not going to work. Well, I mean, we can imagine that the court thought that the Second Amendment complaint was, did fail to state a claim, that he went through it in his mind and his checklist and stuff. But there's absolutely no indication of that. And as I said, that's reviewable de novo by this court. The denial with prejudice is reviewable de novo, which means if the district court didn't have to do it, then this court is going to have to do it and go through all the ways in which this complaint now states a RICO claim. And it raises some very serious and complex issues that should be resolved in the first instance by the district court so that this court has something to review to determine on its own whether the Second Amendment complaint states claim. All right. Thank you, Mr. Kellogg. Thank you to all counsel. We'll take it under the case under advisement.